UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD H.,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK BISIGNANO,<br>  COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 23 CV 14944<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard H. appeals from the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse or remand [17] is denied, the Commissioner's motion for summary judgment [23] is granted, and the denial of benefits is affirmed.[1]

**Background**

In January 2017, plaintiff applied for a period of disability and disability insurance benefits with an onset date of August 17, 2013 (later amended to February 3, 2014). [8-1] 17. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 17-40. After the Appeals Council denied review, plaintiff appealed to this Court. In March 2023, this Court reversed the denial of benefits and remanded for further proceedings. [8-5] 3863-72; *Richard H. v. Kijakazi*, No 20 C 2089, 2023 WL 2631646 (N.D. Ill. Mar. 24, 2023). On remand, the ALJ again denied plaintiff's application for benefits. [8-4] 3786-3811. Plaintiff again appeals to this Court, and the Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity between the amended onset

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [8], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [13].

date and the date last insured. [8-4] 3789-90. At step two, the ALJ determined that plaintiff had the following severe impairments: cervical and lumber degenerative disc disease, urinary incontinence, osteoarthritis, rheumatoid arthritis, carpal tunnel syndrome, and chronic obstructive pulmonary disease. [*Id.*] 3790-95. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 3795-96. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff (1) could never climb ladders, ropes, or scaffolds; (2) could occasionally crouch; (3) could frequently reach in all directions and finger bilaterally with the upper extremities; and (4) must avoid concentrated exposure to environmental irritants. [*Id.*] 3796-3807. At step four, the ALJ held that plaintiff could not perform his past relevant work. [*Id.*] 3807-08. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: fastener (45,000 jobs), marker (300,000 jobs), and router (50,000 jobs). [*Id.*] 3808-10. Accordingly, the ALJ held that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed and the case remanded because (1) the ALJ was required to hold a hearing on remand and solicit the testimony of a medical expert relating to plaintiff's mental impairments and mental RFC, (2) the ALJ's evaluation of his subjective symptom allegations was not supported by the record, and (3) the ALJ erred in evaluating the opinions of plaintiff's treaters.

## I. Mental Impairments

Plaintiff first argues that the ALJ committed several errors when evaluating his mental impairments. His primary contention is that the ALJ defied this Court's decision that the ALJ could not properly assess the severity of plaintiff's mental impairments without expert testimony when the ALJ refused to hold a new hearing

on remand and did not solicit an expert opinion. [17] 8-9. He also argues that the ALJ failed to include a mental RFC assessment in his decision and did not adequately explain that omission. [*Id.*] 9-10. Finally, plaintiff argues that, even if the ALJ properly determined that his mental impairments were not severe, the ALJ was still required to account for the limitations imposed by those non-severe impairments when formulating the RFC. [*Id.*] 10-11.

### A.     This Court's Prior Ruling

This Court reversed the ALJ's first denial of benefits because the ALJ "should have included a more complete analysis of [plaintiff's] mental impairments in the RFC finding, which included no limitations for mental symptoms." *Richard H.*, 2023 WL 2631646, at *3. The ALJ had concluded that plaintiff's depression and panic disorder "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." [8-1] 22. This Court held, however, that "non-severe impairments need to be considered in the RFC, even if the ALJ ultimately concludes no accommodation is necessary," *Richard H.*, 2023 WL 2631646, at *4, but there was no indication that the ALJ considered whether plaintiff's non-severe mental impairments caused limitations that should have been included in the RFC. The Court also emphasized that, although the ALJ did not include a mental RFC assessment, the ALJ failed to "explain why a mental RFC was deemed unnecessary" and thus left the Court "unable to evaluate the basis for that decision." *Id.*, at *3. Finally, the Court observed that the ALJ's evaluation of some of plaintiff's mental functional limitations "appear[ed] to be improperly based on his own evaluation of the evidence rather than the testimony or opinion of a medical expert." *Id.*, at *4. More specifically, the Court found that "[t]he basis for the ALJ's conclusion that driving and preparing meals requires significant concentration"–and thus that plaintiff's ability to perform these activities contradicted his claim that he had problems completing tasks–"is not apparent on its face and needed further support from an expert in the relevant field." *Id.* The Court accordingly vacated the denial of benefits and remanded for further proceedings. *Id.*, at *4.

### B.     The ALJ's Decision on Remand

The ALJ again concluded at step two that plaintiff's depression and panic disorder "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." [8-4] 3792. In support, the ALJ emphasized that plaintiff "generally denied psychiatric complaints to multiple medical providers," his "mental status examinations were generally normal without evidence of cognitive deficits or overt abnormalities," his symptoms were responsive to prescribed medication, and plaintiff "has neither been advised to seek any higher level of outpatient mental health care nor required inpatient psychiatric hospitalization." [*Id.*]. The ALJ characterized plaintiff's "complaints" as "not ongoing during the period in issue and very well were situational and not

3

durational," and the ALJ pointed out that plaintiff "absolutely provided no documentation that the behavioral complaints he had were durational and significantly limiting in his routine on a day-to-day basis throughout the period in issue[.]" [*Id.*].

The ALJ then considered plaintiff's mental functioning pursuant to the four paragraph B criteria, finding that plaintiff's limitations were either mild (in the areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace) or nonexistent (in the area of adapting or managing oneself). [8-4] 3793-94. The ALJ found that, "[b]ecause the claimant's medically determinable mental impairments caused no more than 'mild' limitation in any of the functional areas, they were nonsevere[.]" [*Id.*] 3794 (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ also explained that, in his first decision denying benefits, he had "considered the opinions of State Agency psychological consultants, which I again consider here." [*Id.*]. The agency reviewers at both the initial and the reconsideration levels opined that plaintiff had no severe mental impairments. *See* [8-1] 127, 143. On remand, the ALJ "assign[ed] great weight to these opinions because they are reasonably consistent with and supported by the preponderance of the evidence at the time they were rendered as well as with subsequently developed evidence presented at the hearing demonstrating that the claimant's feelings of depression and anxiety remained secondary to pain and associated lifestyle changes." [8-4] 3794-95.

The ALJ concluded his analysis of plaintiff's mental impairments as follows:

> In this case, the claimant had no significant limitations from a mental impairment that met the durational requirement (of at least a period of twelve continuous months) or were sustained through the period in issue. Accordingly, for all of the reasons cited, I do not find limitations that the claimant had that require additional consideration to the residual functional capacity I made below.

[8-4] 3795.

Consistent with that conclusion, the ALJ did not include any limitations related to plaintiff's mental impairments in the RFC assessment. *See* [8-4] 3796-3808.

C. **Analysis**

The Court concludes that the ALJ did not violate this Court's remand order or otherwise err by resolving the case on the record and without holding a hearing or soliciting expert testimony. The Court further concludes that the ALJ considered whether plaintiff's non-severe mental impairments caused any functional limitations

4

that needed to be included in the RFC determination and adequately supported his conclusion that they did not.

This Court's remand order required the ALJ to (1) obtain expert opinion evidence to support his conclusion that two of plaintiff's ADLs involved "significant concentration," (2) explain more fully why he deemed a mental RFC assessment unnecessary, and (3) account for any non-severe mental impairments when assessing plaintiff's RFC. *See Richard H.*, 2023 WL 2631646, at *3-4. The ALJ complied with each of these requirements.

First, while the ALJ obviously did not hold a hearing or consult an expert about plaintiff's mental impairments, these omissions did not violate the Court's remand order. Neither the remand order nor the Appeals Council's order returning the case to the ALJ required the ALJ to hold a new hearing. *See Richard H.*, 2023 WL 2631646, at *4 (remanding for "further proceedings consistent with this Order"); [8-5] 3875 (Appeals Council instructing ALJ to hold "further proceedings consistent with the order of the court" and "take any further action needed to complete the administrative record and issue a new decision"). For his part, plaintiff has not cited any controlling statute, regulation, or other authority that required the ALJ to hold a new hearing. *See* [17] 6-7, 8-11. Regarding the ALJ's decision not to obtain expert testimony, the Court concludes that the ALJ's modified analysis of plaintiff's mental impairments on remand averted the need for the ALJ to consult an expert. This Court found that expert testimony was needed to support the ALJ's conclusion that plaintiff's ability to drive and prepare simple meals required "significant concentration" and thus contradicted plaintiff's testimony that he had difficulty completing tasks. *Richard H.*, 2023 WL 2631646, at *4. On remand, however, the ALJ backtracked from that conclusion and found only that cooking and driving required plaintiff to maintain "adequate concentration." [8-4] 3793. The ALJ then found that "the preponderance of the record indicates no inabilities to maintain adequate levels of concentration or persistence." [*Id.*] 3794. Because the ALJ's decision on remand did not rest on a conclusion that driving and cooking required "significant concentration," the Court holds that the ALJ did not violate the Court's remand order by deciding the case without expert testimony.

Second, the ALJ adequately explained why he deemed a mental RFC assessment to be unnecessary and adequately accounted for plaintiff's non-severe mental impairments while doing so.

As in his first decision, the ALJ on remand found that plaintiff's depression and panic disorder were non-severe–a conclusion that plaintiff does not challenge. *See* [17] 10 (plaintiff arguing that "[w]hether [his] mental impairment is severe or non-severe is not particularly pertinent"). In support, the ALJ explained that plaintiff (1) only "intermittently" complained of anxiety, being agitated, and feeling depressed, with most of these complaints being "secondary" to life events; (2) regularly denied

5

psychiatric complaints during medical appointments; (3) took prescribed antidepressant medication that was characterized as "beneficial"; and (4) did not receive in-patient mental-health treatment, did not attend outpatient mental-health treatment, and did not even receive a recommendation to obtain such treatment. *See* [8-4] 3792. The ALJ added that plaintiff's mental-impairment-related "complaints were not ongoing during the period in issue and very well were situational and not durational," and that plaintiff "provided no documentation that the behavioral complaints he had were durational and significantly limiting in his routine on a day-to-day basis[.]" [*Id.*]. The ALJ then addressed the paragraph B criteria and explained why he had concluded that plaintiff's functional limitations in the four areas of mental functioning were mild or nonexistent. *See* [*id.*] 3793-94. The ALJ also gave "great weight" to the opinions of the state agency reviewers–both of whom opined that plaintiff's mental impairments were non-severe and caused no more than mild limitations in his mental functioning–because these opinions were "reasonably consistent with and supported by the preponderance of the evidence at the time they were rendered as well as with subsequently developed evidence presented at the hearing demonstrating that the claimant's feelings of depression and anxiety remained secondary to pain and associated lifestyle changes." [*Id.*] 3794-95; *see also* [8-1] 127, 143. Finally, the ALJ acknowledged that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity," and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B[.]" [8-4] 3794. However, the ALJ did not include a mental RFC assessment here because there were no "limitations that the claimant had that require additional consideration to the residual functional capacity [he] made" after step three. [*Id.*] 3795.

The ALJ's decision demonstrates that he considered plaintiff's non-severe mental impairments when formulating the RFC and adequately explains why no limitations related to those impairments were included in the RFC determination. Although the ALJ found that plaintiff's depression and panic disorder caused no more than minimal limitations in his ability to perform mental work-related limitations, the ALJ went on to consider whether these impairments caused any limitations that needed to be included in the RFC assessment. However, the ALJ expressly stated that "I do not find limitations that the claimant had that require additional consideration to the residual functional capacity" he assessed later in the decision. [8-4] 3795. That conclusion has substantial evidentiary support, including the ALJ's findings that plaintiff's complaints related to his mental functioning occurred only intermittently, were not durational, and were secondary to pain and associated lifestyle changes. In other words, because the complaints were mild at worst, occurred only rarely during the period of disability, and were secondary to stressful life events, the ALJ concluded that no nonexertional or mental-health-related limitations needed to be included in the RFC. The ALJ thus complied with the Court's remand order by providing a logical bridge between the evidence and his conclusion that the RFC

6

assessment should not include any limitations relating to plaintiff's non-severe mental impairments. The Court therefore rejects plaintiff's first ground for reversing the ALJ's denial of benefits.[3]

## II. Subjective Symptom Allegations

Plaintiff argues that the record does not support the ALJ's subjective symptom analysis. [17] 11-14. Plaintiff contends that the ALJ merely recited the evidence that supported his allegations of disabling impairments and the evidence that was inconsistent with those allegations and "presented no well-reasoned analysis to explain how those facts led him in one direction as opposed to the other." [*Id.*] 17. Plaintiff also faults the ALJ for failing to discuss a 2015 MRI and a 2017 CT scan, both of which documented plaintiff's foraminal stenosis in the cervical spine, and ignoring documented deficits in his upper extremities. [*Id.*] 13-14.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Alejandro D. v. O'Malley*, No. 21 CV 5250, 2024 WL 4465475, at *5 (N.D. Ill. Oct. 10, 2024) (internal quotation marks omitted). "The ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal

---

[3] The Commissioner also argues that the ALJ was not required to include non-exertional limitations in the RFC assessment because the ALJ found that plaintiff's mental impairments did not meet the duration requirement. *See* [24] 3-5. The duration requirement provides that, "[u]nless [an] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; *see also* 42 U.S.C. § 423(d)(1)(A). Here, however, it is unclear whether the ALJ actually decided that plaintiff's depression and panic disorder did not meet the duration requirement. Nowhere in his decision did the ALJ find, for example, that plaintiff's depression and panic disorder had resolved or that these impairments had not lasted for at least one consecutive twelve-month period. Rather, the ALJ concluded that plaintiff's "complaints" associated with these impairments were not "durational" and that plaintiff had "no significant limitations from a mental impairment that met the durational requirement[.]" This analysis appears to have conflated the duration requirement with the severity requirement. *See, e.g.*, *Gibson v. Comm'r of Soc. Sec.*, 21-CV-41 (PKC), 2022 WL 4661554, at *2 (E.D.N.Y. Sept. 30, 2022) (holding that, where the ALJ found that plaintiff's bilateral trigger thumbs were non-severe because "there was no evidence this condition caused significant limitations for at least 12 months," the ALJ "conflated the requirement of severity with the requirement of duration, *i.e.*, she interpreted the regulation to require that the limitation had to be severe for at least 12 months" and erroneously concluded that "impairment was not severe *because* of its duration, rather than considering whether it was more than *de minimis* in terms of severity and then separately evaluating its actual or expected duration"). Given the Court's disposition of plaintiff's first ground for remand, however, the Court need not definitively resolve this issue.

quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "Flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that a claimant was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original; internal quotation marks and brackets omitted). Even if a court concludes that some of the ALJ's reasons for discounting a claimant's testimony were "not substantiated by the record," a court "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding[.]" *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

The ALJ determined that the medical evidence "confirms the claimant had severe impairments creating physical functional limitations," but found that "the evidence of record does not fully support the extent of his allegations of total disability." [8-4] 3798. In support, the ALJ explained that "pathology on objective diagnostic and radiologic testing demonstrated stable findings, clinical abnormalities on physical examinations showed only minimal intermittent abnormalities with well-preserved musculoskeletal and neurologic functioning, and an overall course of medical treatment that was generally routine with good response to surgical interventions and conservative treatment modalities without the need for long-term aggressive measures[.]" [*Id.*]. Plaintiff has not shown that this credibility determination was so patently erroneous as to require a remand.

First, the ALJ reasonably concluded that plaintiff's allegations of disabling limitations were inconsistent with the objective medical evidence. *See Quinton B. v. O'Malley*, No. 20 CV 5471, 2024 WL 665930, at *16 (N.D. Ill. Feb. 16, 2024) ("Although an ALJ may not ignore a claimant's subjective reports . . . simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration."). The ALJ recounted in detail the "intermittent abnormalities" that were documented during medical exams, *see* [8-4] 3800, and he concluded that "objective radiologic imaging and diagnostic testing show[ed] that [plaintiff's] underlying pathology was abnormal," [*id.*] 3799. But the ALJ could not fully credit plaintiff's allegations where "physical examinations prior to the claimant's date last insured generally document that the claimant retained a normal gait, intact motor strength, normal sensation and is able to move all extremities without evidence of neurologic deficiencies." [*Id.*] 3800. The ALJ also explained why "[t]he longitudinal picture of claimant's radiologic imaging does not fully correspond to nor support the degree of functional limitation the claimant alleges[.]" [*Id.*] 3799. Here the ALJ catalogued the results of plaintiff's history of x-rays, nuclear bone scans, CT scans, and MRIs of his chest, neck, spine, upper and lower extremities, and hips, which in the ALJ's view generally showed only mild arthrosis of the right shoulder and bilateral wrists, normal and unremarkable findings in plaintiff's hips and knees, mild degenerative changes that contributed to

8

mild spinal stenosis without cord displacement along with mild to moderate bilateral foraminal narrowing, and mild to moderate osteoarthritis in the right hip. *See* [*id.*] 3799-3800. The ALJ was permitted to rely on this evidence, the severity of which the ALJ reasonably concluded did not align with plaintiff's allegations, in declining to fully credit plaintiff's subjective symptom allegations.

Second, and relatedly, the ALJ permissibly considered the effectiveness of plaintiff's course of treatment. *See Alejandro D.*, 2024 WL 4465475, at *5 ("[T]he ALJ was entitled to consider whether plaintiff's condition had responded to or improved with treatment."). The ALJ concluded that plaintiff's treatment was "best described as routine and standard with initial recommendations to proceed with conservative treatment modalities limited to pharmacological management," a nebulizer, splinting and ice treatment, and injections. [8-4] 3800. Early in the alleged disability period, moreover, plaintiff reported that physical therapy helped his right shoulder pain to the point that it was "completely resolved" and he received an epidural injection that provided significant relief. [*Id.*] 3801. But the ALJ also recognized that plaintiff's cervical pain was "eventually recalcitrant to conservative measures, and he required invasive intervention to the spine." [*Id.*]. Thus, in December 2015, plaintiff underwent an anterior cervical discectomy with fusion and instruction at C3-4 and C4-5. [*Id.*]. As the ALJ noted, plaintiff reported after the operation that his "pain is resolved" and that he was "back to work and fishing." [*Id.*]. Finally, the ALJ recognized that plaintiff reported "residual left occipital pain and left neck pain" in March 2017, after the surgery, but also that plaintiff believed that the discectomy had helped him. [*Id.*]. This evidence was probative of whether plaintiff's allegations of disabling limitations could be fully credited. *See Alejandro D.*, 2024 WL 4465475, at *5.

Third, the ALJ reasonably considered the extent to which plaintiff's subjective pain allegations were inconsistent with the treatment record. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (ALJ may consider "statements inconsistent with the record" in evaluating claimant's subjective symptom allegations). The ALJ recognized that the "longitudinal medical evidence of record documents the claimant's subjective complaints" of diffuse joint pain, arthritis pain, persistent neck pain, decreased exertional tolerance, and hip pain. [8-4] 3799. However, the ALJ found that the extent of plaintiff's pain complaints was inconsistent with treatment notes reflecting that plaintiff regularly denied muscle weakness, joint pain, neck pain, focal weakness and numbness, residual upper and lower extremity weakness, and swelling in the hands and joints. [*Id.*]. Furthermore, and contrary to plaintiff's argument, *see* [17] 12, the ALJ expressly accounted for the fact that "pain is a fluctuating symptom." [8-4] 3799. But given the "overwhelming level of discrepancy between the claimant's hearing allegations and the underlying record," the ALJ could not credit that plaintiff "was as limited as he alleges prior to the date last insured." [*Id.*].

9

Fourth, the ALJ properly considered whether plaintiff's allegations were consistent with his reported activities of daily living (ADLs). The ALJ found that plaintiff had "engaged in a level of activity prior to his date last insured that was grossly inconsistent with his hearing testimony and allegations of disabling functional limitations," including (1) walking all the way around Sam's Club three times over one weekend in 2014; (2) working in a hot garage during the summer, (3) exercising by walking around lumber yards and box stores and doing some lifting, (4) being able to work a full day and walk up a flight of stairs without difficulty, (5) being fairly active with no exertional shortcoming in October 2015 and October 2016, and (6) working in June 2016. [8-4] 3803. The ALJ recognized that plaintiff's ability to engage in these ADLs "is not in and of itself dispositive of whether the claimant is or is not disabled," but the ALJ concluded that the "wide divergence between the claimant's hearing allegations and reports of functional limitations" and his ability to perform these ADLs supported his ruling that plaintiff was not disabled.

Plaintiff's arguments to the contrary lack merit.

First, it is simply untrue that the ALJ's decision does not permit a reviewing court to understand why the ALJ concluded that plaintiff was not disabled. *See* [17] 11-12. Plaintiff claimed to be disabled because of the limitations imposed by his musculoskeletal impairments, carpal tunnel syndrome, and other impairments,[4] but the ALJ found that this claim was inconsistent with "the degree of abnormality on objective imaging as well as clinical . . . status examinations, level of outpatient care, positive response to surgical intervention, and subsequent conservative treatment along with the nature and level of his activities as he self-reported." [8-4] 3804. The decision therefore reflects the ALJ's reasonable conclusion that, had plaintiff been as limited as he had alleged, the record would have contained more–and more convincing–evidence that plaintiff was disabled. Instead, the ALJ relied on substantial evidence to find that plaintiff could perform light work with exertional limitations that "account[ed] for the claimant's complaints of increased musculoskeletal pain with movement as documented by underlying abnormalities on imaging and physical examination[.]" [*Id.*]. The ALJ thus supplied a logical explanation for his credibility determination, and that determination is supported by substantial evidence. *See Grotts*, 27 F.4th at 1279 (court will uphold ALJ's credibility determination "[a]s long as an ALJ gives specific reasons that are supported by the record").

Second, while plaintiff is correct that the ALJ did not specifically mention the results of a September 2015 MRI and a March 2017 CT scan, the ALJ was not required to "address every piece or category of evidence identified by a claimant" or "fully summarize the record." *Warnell*, 97 F.4th at 1053. In any event, plaintiff does

---

[4] Plaintiff does not challenge the ALJ's conclusions that plaintiff's subjective allegations relating to his urinary incontinence and chronic obstructive pulmonary disease were not fully credible. *See* [17] 11-14; *see also* [8-4] 3802-03.

10

not explain why the ALJ needed to specifically discuss the September 2015 MRI given that plaintiff ultimately underwent surgery in December 2015 with the aim of resolving some of the issues documented in the MRI. *Cf. Purva P. v. Bisignano*, No. 23 CV 2660, 2025 WL 2721090, at *2-3 (N.D. Ill. Sept. 24, 2025) (ALJ did not err by failing to submit plaintiff's October 2021 MRI to expert scrutiny because ALJ accepted that MRI demonstrated that plaintiff's spinal issues had worsened, "so much so that surgery was recommended within two months of the MRI, and evaluated plaintiff's disability claim in light of the subsequent surgery and her reports that her condition had somewhat improved"). Likewise, the ALJ did not mention the results of plaintiff's 2017 CT scan, but he discussed the very treatment note in which those results were reported and accepted that plaintiff continued to experience residual pain despite the 2015 discectomy. *See* [8-4] 3801 (citing [8-2] 1841-42).

Finally, the ALJ's decision refutes plaintiff's argument that the ALJ "utterly ignored the documented deficits in Plaintiff's upper extremities, particularly with regard to the use of his bilateral hands." [17] 13. The ALJ acknowledged plaintiff's remote history of carpal tunnel release surgery, discussed the history of plaintiff's complaints related to carpal tunnel syndrome from 2015 to 2017, noted the absence of evidence that plaintiff had deficits in strength or range or motion, and accordingly found "no evidence to support the claimant's allegations of an inability to use his hands." [8-4] 3801-02. As the Commissioner notes, *see* [24] 9-10, plaintiff discusses this same evidence in his brief and urges the Court to weigh the evidence differently, but the Court cannot "reweigh the evidence" or "substitute [its] judgment for the ALJ's determination" where, as here, "substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53.

For these reasons, the Court rejects plaintiff's argument that the ALJ's credibility determination was patently erroneous.

### III.  Opinion Evidence

Finally, plaintiff argues that the ALJ erred in weighing the opinions of three of his treating physicians. [17] 14-16.

Because plaintiff applied for benefits before March 27, 2017, the ALJ was required to apply the treating-physician rule in weighing the opinion evidence. That rule "requires ALJs to give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Peter V. v. Dudek*, Case No. 22-cv-50306, 2025 WL 885997, at *2 (N.D. Ill. Mar. 21, 2025) (internal quotation marks omitted).[5]

---

[5] Plaintiff mistakenly argues that the treating-physician rule is inapplicable in this case, *see* [17] 4, but the Court will consider his arguments as if they were presented under the correct legal standard.

11

### A.  Dr. Muradi's Opinion

The ALJ declined to apply controlling weight to the opinion of plaintiff's cardiologist, Hazem Al Muradi, and gave his opinion only "some" weight. [8-4] 3805. Dr. Muradi opined that plaintiff's atypical chest pain was noncardiac in nature, but that plaintiff's cardiac symptoms would occasionally interfere with the claimant's attention and concentration. *See* [8-2] 1772-75. The ALJ recognized that Dr. Muradi was a specialist and an examining medical provider but concluded that his opinions "were exclusively offered from a cardiac status" and "fail[ed] to consider the totality of the claimant's medical impairments[.]" [8-4] 3805. Plaintiff contends that the ALJ's analysis was "flimsy, at best" and reflects the ALJ's "mistaken impression that attention and concentration are not work-related functions." [17] 15. The Court concludes that plaintiff's argument is so underdeveloped as to be forfeited. *See Alejandro D.*, 2024 WL 4465475, at *6. In any event, plaintiff simply ignores the ALJ's key finding that Dr. Muradi's opinion was inconsistent with the "totality of the evidence" and the "preponderance of the evidence" discussed in his decision. [8-4] 3805. As discussed in detail above, the ALJ found that plaintiff had only a mild limitation in concentrating, persisting, or maintaining pace and that his mental impairments caused no limitations that needed to be accommodated in the RFC assessment.[6] Nor is there any basis in the ALJ's decision to support plaintiff's exaggerated claim that the ALJ did not understand that attention and concentration are work-related functions. The ALJ thus had a substantial evidentiary basis to assign less than controlling weight to Dr. Muradi's opinion.

### B.  Dr. Pelinkovic's Opinion

The ALJ likewise declined to apply controlling weight to the opinion of plaintiff's orthopedic surgeon, Dalip Pelinkovic, and instead assigned his opinion only "minimal" weight. [8-4] 3806-07. Here, plaintiff misrepresents the ALJ's handling of this opinion, contending that the ALJ dismissed the entirety of Dr. Pelinkovic's opinion simply because Pelinkovic "ventured an opinion about the ultimate question of disability, which is reserved to the Commissioner." [17] 15. The ALJ did reject that aspect of Dr. Pelinkovic's opinion because it touched on an issue that was reserved to the Commissioner–and because it was "conclusory." [8-4] 3806. But the ALJ also emphasized that Pelinkovic "fails to offer any explanation for his opinion" and his opinion that plaintiff had disabling work-related limitations was contrary to Pelinkovic's own treatment notes and the overall record. [*Id.*]; *cf. Purva P.*, 2025 WL 2721090, at *4 (treating provider's failure to support opinion with treatment notes "goes directly to the regulation's requirement that the ALJ consider the internal supportability of a medical opinion and assess the objective medical evidence and supporting explanations presented by a medical source in supporting the opinion")

---

[6] Notably, one of plaintiff's orthopedic surgeon opined that plaintiff's pain and fatigue would never interfere with his ability to pay attention or concentrate. *See* [8-2] 1793.

12

(internal quotation marks omitted). As for Dr. Pelinkovic's opinion about plaintiff's expected absenteeism, the ALJ found that this was speculative because "[t]he record does not show frequent cancellations or no shows for appointments or an inability to otherwise meet obligations." [8-4] 3806. All the foregoing provides substantial evidentiary support for the ALJ's decision to afford less than controlling weight to Dr. Pelinkovic's opinion.

### C. Dr. Belin's Opinion

Finally, the ALJ gave no weight to the opinion of another of plaintiff's orthopedic surgeons, Erin Belin. The ALJ explained that Dr. Belin did not begin treating plaintiff until July 2018, "nearly five years after the original alleged onset date and six months after the date last insured." [8-4] 3807. The ALJ noted that, despite that significant gap, Dr. Belin provided no explanation for his conclusion that the limitations he identified in his opinion existed as of plaintiff's alleged onset date of August 27, 2013. [*Id.*]. The ALJ also concluded that Dr. Belin's opinion was "grossly excessive, inconsistent with and unsupported by his own treatment records as well as the longitudinal medical evidence of record prior to the date last insured." [*Id.*]. Plaintiff again misrepresents the ALJ's decision, asserting that the ALJ "appeared to find it incredible that a specialist (with access to Plaintiff's medical records) would have knowledge of the onset of his patient's condition." [17] 15. To the contrary, the ALJ reasonably questioned how Dr. Belin–who never treated plaintiff before the date last insured–could be sure that the limitations he identified in 2018 existed during the alleged disability period. This was a completely reasonable basis to discount Belin's opinion–especially when Dr. Belin himself offered no explanation of this point. To the extent that plaintiff argues that the ALJ's rejection of Dr. Belin's opinion was premised on the ALJ's supposedly unreasoned review of the medical record, *see* [17] 15-16, the Court rejects that argument for the same reasons given elsewhere in this decision.

### Conclusion

Plaintiff's motion to reverse or remand [17] is denied, the Commissioner's motion for summary judgment [23] is granted, and the denial of benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 9, 2026**

13